Egan Jr., J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Saratoga County) to review a determination of respondent Saratoga County Administrator which terminated petitioner’s employment.
Petitioner began her employment with the Saratoga County Probation Department in 1979 and, in 2004, was named as the Department’s deputy director. In November 2009, Paul Viscusi, then the Department’s director, suffered a heart attack and, shortly thereafter, elected to retire. As a result, between the time of Viscusi’s heart attack in November 2009 and the appointment in August 2010 of his successor, respondent John Adams, petitioner effectively was in charge of the Department.
Prior to serving as the Department’s deputy director, petitioner consistently received positive performance evalúa *1228 tions.[1] In March 2010, however, petitioner received a “letter of counseling” from the then administrator of respondent Saratoga County raising a number of concerns regarding petitioner’s leadership, supervisory and time-management skills. In addition to citing petitioner’s “lack of attention” to the preparation and logging of “time sensitive” reports, the administrator questioned petitioner’s participation in the decision to assign a probation officer with “little [adult] probation experience” to supervise the Intensive DWI Internship Program in July 2009 and criticized petitioner’s “inadequate supervision and training” of this individual—a failure that purportedly was “compounded by [petitioner’s] eventual directive [that such individual not] seek the assistance of other probation officers” in the Department. Petitioner was encouraged to “immediately make every effort to improve [her] management skills” and was warned that her failure to do so could result in a loss of employment.
In October 2010, petitioner received a second counseling notification—this time in the form of a memorandum from Adams—citing, among other things, her failure to timely submit various state-mandated reports and surveys to the Department’s oversight agency. Concerns regarding petitioner’s performance subsequently came to a head in January 2011, when it was discovered that three of the files assigned to the DWI probation officer were missing—one of which involved an active probationer who had not been supervised in any capacity since July 2009.[2] Adams immediately conducted an audit of the approximately 140 files assigned to such probation officer, which resulted in the discovery of additional deficiencies and omissions.[3] As a result, petitioner was charged in March 2011 with incompetence and suspended without pay. Following a hearing pursuant to Civil Service Law § 75, the Hearing Officer issued a 50-page decision, wherein he sustained the bulk of the specifications and recommended petitioner’s “dismissal from service [as] the only viable solution.”
Respondent Saratoga County Administrator thereafter *1229 adopted the Hearing Officer’s recommendation, found petitioner guilty of the overall charge of incompetence and terminated her employment. In response, petitioner commenced this CPLR article 78 proceeding seeking, among other things, reinstatement as deputy director of the Department and back pay. Supreme Court subsequently transferred the proceeding to this Court pursuant to CPLR 7804 (g).
We confirm. “[T]he standard of review to be applied in reviewing an administrative determination made pursuant to Civil Service Law § 75 is whether the determination is supported by substantial evidence” in the record as a whole (Matter of Lory v County of Washington, 77 AD3d 1265, 1266 [2010]; see Matter of James v Hoosick Falls Cent. School Dist., 93 AD3d 1131, 1132-1133 [2012]; Matter of Covert v Schuyler County, 78 AD3d 1309, 1310 [2010], lv denied 16 NY3d 706 [2011]). Credibility determinations lie “solely within the province of the Hearing Officer” (Matter of Perryman v Village of Saranac Lake, 64 AD3d 830, 835 [2009]) and, to that end, “this Court may neither substitute its own judgment for that of the Hearing Officer nor weigh the evidence presented” (Matter of Lory v County of Washington, 77 AD3d at 1267; see Matter of Covert v Schuyler County, 78 AD3d at 1310; Matter of Sindoni v County of Tioga, 67 AD3d 1183, 1184 [2009]). Notably, “a finding of incompetence . . . only requires evidence of some dereliction or neglect of duty” (Matter of Branam v Simons, 300 AD2d 973, 974 [2002]; accord Matter of Dickinson v New York State Unified Ct. Sys., 99 AD3d 569, 570 [2012]; Matter of Phillips v Le Page, 4 AD3d 704, 705 [2004]).
Here, the first two specifications charged petitioner with incompetence based upon, among other things, her failure to (1) report and/or appreciate the significance of the three missing case files, (2) monitor the caseload assigned to the DWI probation officer and/or discover the documented deficiencies contained therein, and (3) adequately train and/or supervise this probation officer—despite being warned in March 2010 of the urgent need to do so. At the hearing, Adams testified—in detail and at great length—regarding petitioner’s failure to immediately apprise him of the missing case files, the public safety implications of having a probationer go unsupervised for an approximately 18-month period and petitioner’s overall failure to supervise the probation officer overseeing the DWI program. Specifically, Adams testified that had petitioner undertaken a “meaningful review” of the files assigned to this probation officer, petitioner should have discovered—given her background, training and experience—the regulatory violations contained *1230 therein, namely, the insufficient number of personal or collateral contacts with respect to certain identified probationers (see 9 NYCRR 351.4), the failure to report subsequent arrests of certain probationers to the relevant court within the prescribed time period (see 9 NYCRR 352.6 [a] [3] [ii][4]) and the failure to enter probationer information in a particular database in a timely fashion (see 9 NYCRR 348.2).[5] According to Adams, petitioner never advised him that probationers were not being seen or that the required reports were not being filed; instead, petitioner merely indicated that the probation officer in question was “behind on his paperwork.”
In addition to the foregoing, there was abundant testimony regarding the overall lack of training and supervision supplied by petitioner to the probation officer in charge of the DWI program. Viscusi agreed that the caseload inherited by this probation officer “[was] a mess,” but it was his expectation that petitioner would “dig in[ ]” and work with the probation officer in order to “straighten everything out.” Petitioner similarly acknowledged that the approximately 140 files at issue “were in absolute shambles”—a situation precipitated in no small measure by the fact that, according to petitioner, the individual previously assigned to this caseload falsified entries on a substantial number of the files at issue. However, despite being aware of the status of this caseload, the subject probation officer’s lack of experience in supervising adult probationers and, more to the point, the prior deficiencies noted in her supervision and training of this individual, petitioner made no real effort to remedy the situation.
In this regard, the newly assigned probation officer, who could recall attending only the basic training program, testified that petitioner did not undertake a case-by-case review of the files assigned to him, he and petitioner did not meet on a regular basis to discuss his caseload and petitioner generally adopted a *1231 “get to them when you can” attitude relative to the required quarterly reports. Additionally, the probation officer stated that during the relevant time period, petitioner did not provide any negative feedback or constructive criticism regarding his performance; to the contrary, the performance evaluation completed by petitioner in June 2010 ranked this probation officer’s overall performance as “[m]eritorious”—a rating that, according to Adams, clearly was “not founded in reality” given the documented deficiencies. Such testimony, in our view, demonstrates petitioner’s overall neglect of her supervisory responsibilities and, as such, constitutes substantial evidence to support the finding of incompetence as to the first two specifications.
We reach a similar conclusion with respect to the third specification charging petitioner with incompetence based upon her supervision of the Department’s Juvenile Justice Unit. Simply put, the testimony offered by Adams and others regarding, among other things, petitioner’s failure to timely advise and train her staff with respect to updated intake proceedings relative to Family Ct Act article 7 petitions and/or properly implement a required youth assessment screening instrument constitutes further neglect of her responsibilities and is sufficient to sustain the finding of incompetence.
As to the issue of penalty, it is well settled that this Court will set aside the penalty imposed “only if it is so disproportionate as to be shocking to one’s sense of fairness” (Matter of Sindoni v County of Tioga, 67 AD3d at 1184 [internal quotation marks and citation omitted]; see Matter of McKenzie v Board of Educ. of the City Sch. Dist. of Albany, 100 AD3d 1096, 1098 [2012]). Here, the record reflects that although petitioner twice was warned regarding serious and specific deficiencies in her job performance, she continued to exercise poor professional judgment with respect to, among other things, the management, training and supervision of the probation officer in charge of the DWI program. The record further illustrates that petitioner’s neglect of her duties—particularly with respect to her failure to implement certain policies and/or comply with mandated reporting requirements—not only created what Adams aptly described as “a huge public safety issue,” but also exposed the County to liability. Thus, notwithstanding petitioner’s many years of service and her prior positive performance evaluations, we do not find the penalty of termination to be shocking to this Court’s sense of fairness (see Matter of Covert v Schuyler County, 78 AD3d at 1311; Matter of Lory v County of Washington, 77 AD3d at 1268; Matter of Sindoni v County of Tioga, 67 AD3d at 1184-1185; Matter of Monahan v Delaware-Chenango *1232 Madison-Otsego Bd. of Coop. Educ. Servs., 27 AD3d 995, 996 [2006]). Petitioner’s remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Peters, EJ., Rose and Stein, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.

. According to Viscusi, written performance evaluations ceased after 2004 because the then administrator of respondent Saratoga County preferred to personally conduct yearly evaluations in his office.

. Adams testified that this discovery was particularly troubling, as probationers assigned to the DWI program had an 80% recidivism rate and, therefore, posed a significant risk to public safety.

. This probation officer was counseled, given additional training and reassigned to a new supervisor, who conducted a case-by-case review of the probation officer’s files and assisted him in prioritizing the work to be accomplished. As a result of these efforts, all of the “major issues” with such files were resolved within three months.

. Pursuant to the cited regulation, upon discovering that a probationer under its supervision had been arrested for a crime, i.e., a felony or a misdemeanor offense, the Department was required to “notify the proper court(s) and provide a brief description of the alleged crime(s) and the status of the case, no later than seven business days upon learning of an arrest from any source” (9 NYCRR 352.6 [a] [3] [ii]). Such information, in turn, was to “be recorded in either a Court Notification Report or a Violation of Probation Petition and Report” (9 NYCRR 352.6 [a] [3] [ii]). According to Viscusi, the Department did not file the required documents with respect to “misdemeanor cases”—purportedly because a judge instructed it not to do so.

. Contrary to petitioner’s assertion, the failure to enter such information constituted a continuing violation and, hence, the specific entries challenged by petitioner are not barred by the applicable statute of limitations (see Civil Service Law § 75 [4]; Matter of Covert v Schuyler County, 78 AD3d at 1311).